UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| PATRICIA BOWMAN, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:11CV100 CDP |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. Section 405(g) for judicial review of the Commissioner's final decision denying the application of Patricia Bowman for Disability Insurance Benefits under Title II of the Social Security Act. Bowman alleges that she is disabled because she suffers from diabetes, peripheral neuropathy, hypertension, non-Hodgkins lymphoma, and a stroke in her right eye. Because I find that the decision denying benefits was supported by substantial evidence, I will affirm the decision.

**Procedural History**

Bowman applied for disability insurance benefits on April 22, 2008, alleging a disability onset date of April 20, 2008. The claim was initially denied on June 6, 2008. Bowman appealed and a hearing was held before the

Administrative Law Judge on December 7, 2009. The ALJ denied her claim on March 10, 2010. The Appeals Council of the Social Security Administration denied Bowman's request for review on on April 15, 2011. Thus, the decision of the ALJ stands as the final decision of the Commissioner.

### Evidence Before the Administrative Law Judge

#### Testimony

Bowman was born on June 22, 1952, and so was 57 years old at the time of the ALJ's ruling. Although she quit school in the eighth grade, she has a G.E.D. She previously worked as a certified nurse's aide, a medical technician, a machine operator, and a sewing machine operator.

Bowman testified that on April 20, 2008, she had a stroke in her eye, resulting in double vision, and she has not worked since. She had surgery to correct double vision, and although it was corrected for the most part, she still sees double when she is tired of if she covers her eyes a certain way. Bowman wears contacts daily and cannot recall the last time she had her vision checked. Plaintiff submitted to an ad hoc vision test during the hearing, and from a distance of 10 feet, could read two words on an object about one third of an inch in size. Plaintiff can read the paper using reading glasses. Plaintiff stated that her vision worsens when her blood sugar is high.

Plaintiff testified that she did not go back to work because she has balance issues that cause her to fall frequently. Because of the falls and balance issues she uses a cane. She said she can no longer do the lifting that is needed to be a nurse's assistant. She testified that she can walk a short distance, approximately 150 feet, but that she is limited by pain in her feet and legs associated with low potassium, for which she takes medication. She estimated that she could stand continuously for about 15 minutes, and sit for about 30 minutes continuously. Anything more than that hurts her back. Bowman estimated that she can lift no more than a gallon of milk, because her arms and her back hurt. She can do household chores, but they take her approximately twice as long as they ordinarily would take. Bowman stated that she can drive short distances, and does not drive farther because her legs hurt if she does.

Bowman testified that her most significant medical issue currently is her diabetes, which is causing neuropathy in her feet and legs, even though she is on an insulin pump and checks her blood sugar about eight times per day. Plaintiff testified that she struggles with low potassium, though she is on medication. She stated that she takes her medication regularly, but it upsets her stomach. Plaintiff reported that her potassium levels are checked every three months. She testified that she was hospitalized for low potassium in October 2007.

Plaintiff stated that she also has high blood pressure and depression, for which she takes medication. She explained that she was diagnosed with non-Hodgkins lymphoma in 2006. She had surgery to excise the affected lymph node and is no longer under treatment for cancer.

In describing her prior work, Plaintiff testified that as a sewing machine operator, she serged and made coats. She testified that it was seated work that did not involve much lifting – simply moving coats from one box to another. Plaintiff stated that as a machine operator, she operated a large saw, making metal frames for windows. According to Plaintiff, she stood to perform this work, but there was minimal lifting at this job as well – one piece of metal at a time, weighing less than 10 pounds. As a C.N.A., Plaintiff testified, she had to lift her patients frequently.

Dr. Vincent Stock, a licensed psychologist, gave testimony as a vocational expert in this case. He testified that Plaintiff's C.N.A. job was considered heavy-level work, that her machine operator position was medium-level work, and that her sewing machine operator position was considered light work. When asked a hypothetical question approximating Plaintiff's situation, Dr. Stock testified that both the machine operator position and the sewing machine operator position would be ruled out if the double vision were factored in, but both are available if it

is not. Dr. Stock testified that the sewing machine operator position is available in the national economy, but he did not answer whether the machine operator position was available at the light-work level in the national economy, as it is usually classified as a medium-level job.

Medical Records

Dr. Deisher is a plastic and hand surgeon. From 2004 to 2009, he treated Bowman for trigger fingers and thumbs and carpal tunnel problems. He performed carpal tunnel release surgery on her right wrist and right trigger thumb release surgery on December 16, 2004, and carpal tunnel release surgery on her left wrist four months later, on March 30, 2005. Seven months later, on October 26, 2005, he performed trigger release surgery on her left thumb and at the same time biopsied her right cervical lymph node. The results of this biopsy showed that she had non-Hodgkins lymphoma.

Bowman later saw Dr. Stanley D. Sides, an oncologist, for follow-up regarding the lymphoma. In 2007, although she feared a relapse of her non-Hodgkin's lymphoma because of a node in her neck, Dr. Sides deemed the node not to be a relapse, and Dr. Sides noted on several occasions from 2007 through 2009 that Plaintiff was "clinically doing well."

Dr. David C. Boardman is plaintiff's longtime primary care physician. He

saw her over 40 times between April 2007 and November 2009 for a variety of ailments, diagnosing her with, *inter alia*, a left heel spur, hypertension, hyperlipidemia, uncontrolled insulin dependent diabetes, hypokalemia (low potassium), leg cramps, depression, obesity, and edema in the legs. On May 24, 2007 Bowman was admitted to the hospital with severe leg cramping and diagnosed with hypokalemia. She was released two days later after her potassium levels stabilized. Shortly thereafter, on May 29, 2007, she returned to the Emergency Room complaining of fluid retention since she left the hospital. She was evaluated and released for follow up with Dr. Boardman. He saw her the next day and noted that "she denies any present symptoms." He continued to see her every two to four weeks for follow up for the hypokalemia and diabetes, and for treatment of other disorders, including an infected cyst in her armpit and a sinus infection. On October 10, 2007 she returned to the Emergency Room with complaints of severe leg cramping. She was released after examination and directed to follow up with Dr. Boardman. She continued to see him for continuing treatment of her diabetes, which was at times uncontrolled. Throughout his medical records, Dr. Boardman's repeated recommendation to Plaintiff was to follow a healthy diet, to exercise, and to quit smoking.

On April 18, 2008, Bowman complained to Dr. Boardman of double vision.

He noted that she had suffered from episodic double vision for several years, but she had seen her optometrist (Dr. Branson) who was concerned that the double vision might be caused by some metabolic reason. Dr. Boardman ordered an MRI of her brain, which was normal, and referred her to an ophthalmologist, Dr. Mary Beth Kapp. Dr. Kapp diagnosed Sixth Nerve Palsy, which Dr. Boardman referred to as a stroke in her eye. After trying several less invasive treatments, Dr. Kapp performed surgery – a bilateral medial rectus muscle recession – on July 22, 2008. On September 17, 2008, Dr. Kapp reported to Dr. Boardman that the surgery had resolved the double vision problems.

The first time Dr. Boardman's records discuss depression is at the May 1, 2008 visit where he describes her eye problem as a stroke. He noted she was depressed and was seeking disability. Although this appears to be the first reference to complaints of depression in the records provided to the ALJ, Dr. Boardman's records also show that he was prescribing anti-depressants as early as April of 2007.

On June 12, 2009, Dr. Boardman filled out a Medical Source Statement detailing his opinion of Plaintiff's ability to perform work-related activities. He listed her diagnoses as hypertension, uncontrolled diabetes, non-Hodgkins lymphoma, CVA/right eye paralysis, and depression. In his opinion, Plaintiff

7

could lift or carry five pounds occasionally or less than five pounds frequently, could stand or walk for less than 15 minutes continuously and less than one hour cumulatively per day, and could sit for two hours continuously and 5 hours cumulatively per day. Dr. Boardman felt that Plaintiff could occasionally balance, kneel, bend, reach, handle, finger, feel or grip. In his Medical Source Statement he stated that hers was "one of the most legitimate disability cases I have seen."

The ALJ referred Bowman for a post-hearing disability consultation with Dr. Matthew Karshner, which took place on December 29, 2009. After examination, he opined that Plaintiff was capable of lifting or carrying up to ten pounds frequently and up to fifty occasionally. He believed she would be able to stand for an hour without interruption and four hours cumulatively during a workday, sit for three hours continuously and six cumulatively, and walk for one hour continuously and four hours cumulatively. He indicated that she had no difficulty with her hands, and that she had the ability to occasionally do a full range of postural activities, with the exception of crawling. He indicated no current issue with her hearing or vision.

## ALJ's Findings

The ALJ conducted the five-step evaluation process laid out in 20 CFR 404.1520(a) to determine whether Plaintiff had a disability at the alleged onset

8

date. The ALJ found that because the Plaintiff had previously performed work that was within her RFC, she could return to that work and therefore was not disabled by the standards of the Social Security Act. He made the following specific findings:

>    1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.
> 
>    2.   The claimant has not engaged in substantial gainful activity since April 20, 2008, the alleged onset date.
> 
>    3.   The claimant has the following severe impairments: insulin dependent diabetes mellitus with lower extremity peripheral neuropathy and hypertension.
> 
>    4.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.
> 
>    5.   The claimant has the residual functional capacity to perform light work . . . except for lifting or carrying more than 20 pounds occasionally and 10 pounds frequently; standing or walking more than 6 hours in an 8-hour workday with normal work breaks; and climbing, balancing, stooping, crouching, kneeling, or crawling more than occasionally.
> 
>    6.   The claimant is capable of performing her past relevant work as a sewing machine operator and machine operator. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.
> 
>    7.   The claimant has not been under a disability, as defined in the social Security Act, fromApril 20, 2008, through the date of this decision.

The ALJ found that plaintiff's daily activities were inconsistent with her allegations of disabling symptoms and limitations. He found that the opinion of Dr. Boardman, Plaintiff's longtime physician, was not owed controlling weight. The ALJ found that though Dr. Boardman's opinion was supported by some evidence, it was inconsistent with both the objective medical evidence and his own and the other treating doctors' conservative approach to treatment. The ALJ found the opinion of the consulting physician, Dr. Karshner, to be more credible because it was supported by the clinical signs, symptoms and findings in the record. Relying on the testimony of the vocational expert, he concluded that Bowman could perform her past relevant work as a machine operator as previously performed and her past relevant work as a sewing machine operator both as actually performed and as that job is generally performed.

## **Legal Standard**

On review, the Court determines if the Commissioner's decision is "supported by substantial evidence." *Onstead v. Sullivan*, 962 F. 2d 803, 804 (8th Cir. 1993). Substantial evidence is less than a preponderance, but is enough so that a reasonable mind would find it adequate to support the ALJ's conclusion. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000).

In evaluating the ALJ's decision, the Court must consider both evidence

that supports the conclusion reached and evidence that casts doubt upon it. *Eichelberger v. Barnhart*, 390 F.3d 584. An administrative decision is not reversed if there are two possible conclusions to be reached and the Court simply would have chosen a different outcome. *Id.* The Court should disturb the administrative decision only if it falls outside the available "zone of choice" of conclusions that a reasonable fact-finder could have reached. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006).

Disability is defined in the Social Security regulations as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1). In evaluating whether an applicant is disabled by the standards of the Social Security Administration, the Commissioner must evaluate the claim using a five-step process:

First, the Commissioner determines if Plaintiff is presently engaged in substantial gainful activity. If so, Plaintiff is not disabled. 20 C.F.R. § 404.1520(b).

Second, the Commissioner determines if the alleged impairment is sufficiently severe so as to significantly limit Plaintiff's ability to work. If not,

11

Plaintiff is not disabled. *Id.* § 404.1520(c).

Third, if an impairment is sufficiently severe, the Commissioner determines whether the impairment meets or equals an impairment listed in the regulations. *Id.* § 404.1520(d).

Fourth, if the impairment does not meet or equal a listed impairment, the Commissioner determines whether Plaintiff's impairment prevents her from returning to her past work. *Id.* § 404.1520(e).

Fifth, if it does, the Commissioner determines whether any substantial gainful activity exists which Plaintiff can perform. *Id.* § 404.1520(f).

In determining the Plaintiff's residual functional capacity, the ALJ is required to consider the full body of evidence, but is entitled to dismiss or disregard that which he or she feels is irrelevant. *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).

A treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight. *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). However, the record must be considered as a whole, thus the treating physician's opinion does not automatically control. *Prosch*, 201 F.3d at 1013. A treating physician's opinion is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory tests and is not inconsistent with the

other substantial evidence of record. *See* 20 C.F.R.§ 404.1527; *see Pirtle v. Astrue,* 479 F.3d 931, 933 (8th Cir. 2007).

In considering the subjective complaints in the testimony of Plaintiff, the Commissioner must consider the factors set out in *Polaski v. Heckler*, 739 F.3d 1320 (8th Cir. 1984), which include 1) Plaintiff's daily activities; 2) the duration, frequency and intensity of the pain; 3) precipitating and aggravating factors; 4) dosage, effectiveness and side effects of medication; and 5) functional restrictions. *Id.* at 1322.

## Discussion

I.   <u>Consideration of Treating Physician's Opinion</u>

Plaintiff argues that the ALJ did not properly consider the opinion of treating physician Dr. David Boardman. A treating physician's opinion is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory tests and is not inconsistent with the other substantial evidence of record. *See* 20 C.F.R. § 404.1527; *see Pirtle v. Astrue,* 479 F.3d 931, 933 (8th Cir. 2007) ("When a treating physician's notes are inconsistent with his or her residual functional capacity assessment, we decline to give controlling weight to the residual functional capacity assessment."). The factors to be considered include 1) the examining relationship; 2) the treatment relationship; 3) supportability; 4)

consistency; 5) specialization; and 6) other factors that support or contradict the opinion. *Shontos v. Barnhart,* 328 F.3d 418 (8th Cir. 2003).

The decisions on disability and ability to work are decisions reserved for the ALJ. It would be improper for the ALJ to abdicate his role by assigning controlling weight to a physician. *Ellis v. Barnhart*, 392 F.3d 988 (8th Cir. 2005). Here, in fact, the ALJ did not assign "controlling weight" to either Dr. Boardman or Dr. Karshner, the consulting physician. Dr. Karshner's opinion was properly assigned "significant weight," while Dr. Boardman's opinion was found to be inconsistent with both the objective medical evidence and Dr. Karshner's opinion. Plaintiff argues that the report of a consulting physician on the basis of one examination should not be considered "substantial evidence." But where the consultant's medical assessments are supported by better or more thorough medical evidence or where the treating physician's opinions are inconsistent, the ALJ may assign more credit to the consulting doctor's opinions. *Cantrell v. Apfel,* 231 F.3d 1104, 1107 (8th Cir. 2000). This case could arguably fall under either exception, so they are relevant here. The consultant's evaluation focused on the things that are important in determining functional capacity, which is directly relevant to disability.

Although Dr. Boardman was Plaintiff's longtime treating physician, his

conservative treatment of Plaintiff and the objective medical evidence bely his assertion that Plaintiff is "one of the most legitimate cases of disability [he has] seen." In 40 visits to Dr. Boardman in the period 2007 to 2009, by far the most prevalent recommendations for Plaintiff call for regular exercise, a healthy diet, and consistent management of her glucose and potassium levels. (Tr. 326-27, 329, 409-10, 412-15, 417, 419-20, 423-24, 426). Conservative treatment of a patient can qualify as substantial evidence to support an ALJ's decision against disability. *See Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001); *See Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003) (a lack of functional restrictions placed on claimant's activities is inconsistent with a finding of disability).

The treatment that was prescribed for Plaintiff was largely effective, which suggests a finding of no disability. Plaintiff's double vision was surgically corrected in 2008, and Plaintiff reported in testimony that her vision suffers now only when she is overly tired or when her blood sugar is high. Plaintiff testified that currently, diabetes is her "most significant" medical problem, yet the record indicates that when she uses an insulin pump, her glucose levels improve (Tr. 486). This would indicate that by and large, Plaintiff's ailments are controllable; "[i]mpairments that are controllable or amenable to treatment do not support a finding of total disability. *Hutton v. Apfel,* 175 F.3d 651 (8th Cir. 1999).

II.     Consideration of Plaintiff's RFC

The ALJ is required to consider the full body of evidence, but is entitled to dismiss or disregard that which he or she feels is irrelevant, *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001), or inconsistent with other evidence. *Kelley v. Callahan*, 133 F.3d 583 (8th Cir. 1998). For this reason, the ALJ was entirely proper in considering and then declining to give controlling weight to the opinion of the treating physician.

The ALJ discussed the medical opinion of Dr. Boardman extensively in his decision, and gave well-founded reasons for his assignment of little weight to Dr. Boardman's opinion. The ALJ cites a lack of objective medical basis for the extreme limitations recommended in his opinion, the inconsistency with the other objective medical evidence in the record, and the inconsistency with claimant's own account of daily activities. Because the record as a whole was inconsistent with Dr. Boardman's opinion and because Dr. Boardman's opinion was not well supported, the ALJ was proper in deciding to discount the opinion of Dr. Boardman to the extent that he did.

III.    Determination of Capability to Perform Past Work

The ALJ, in concluding that Plaintiff is capable of returning to her past work, analyzed properly the evidence of record, including testimony from a

Vocational Expert. Plaintiff alleges that the ALJ failed to take into consideration the physical and mental demands of her past work as a sewing machine operator and machine operator, therefore rendering the RFC determination improper.

It is the ALJ's duty to resolve conflicts in the evidence. *See Hacker*, 459 F.3d at 936. Because the evidence in the record is conflicting, the ALJ was within his rights to resolve that conflicting evidence. The ALJ explored extensively in the hearing the questions of Plaintiff's impairments, including whether double vision would preclude her from performing her past work (Tr. 54-57, 83-85) and whether Plaintiff's ability to lift was commensurate with the requirements of these positions both generally and as she described them in her testimony (Tr. 81-85). The ALJ made a conclusion that the double vision issue was resolved with surgery, and therefore was properly not included in the RFC analysis (Tr. 14).

IV.  Credibility of Plaintiff's Testimony

The ALJ was within his rights in employing the *Polaski* factors to conclude that Plaintiff's description of her daily activities was inconsistent with her allegations of disability, and therefore, not credible. When assessing complaints of pain, the ALJ is instructed to consider the objective medical evidence as well as the claimant's daily activities; duration, frequency and intensity of the pain; precipitating and aggravating factors; dosage, effectiveness and side effects of

17

medications; and functional restrictions. *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984).

Here, the ALJ discussed the objective medical evidence at length, concluding that it did not corroborate Plaintiff's allegations. The ALJ described Plaintiff's daily activities as "house work at a slow pace with frequent breaks, napping during the day, and driving," all of which were admitted by Plaintiff in testimony. The ALJ considered in detail the frequency and intensity of Plaintiff's pain. The ALJ described Plaintiff's medications. The ALJ discussed Plaintiff's functional restrictions, or lack thereof. The ALJ noted that "[t]o the extent the claimant's daily activities are restricted, they appear restricted mainly as a matter of choice; rather than any apparent medical prescription." The ALJ properly considered all of the *Polaski* factors in concluding that Plaintiff's testimony was not credible.

For the aforementioned reasons, it was reasonable for the ALJ to conclude that Bowman was capable of returning to her past work, based on her residual functional capacity, and that she was therefore not disabled according to the Social Security Act's definition. This decision falls well within the "zone of choice" available to the ALJ. *Hacker,* 459 F.3d at 936.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is affirmed.

A separate judgment in accord with this Memorandum and Order is entered this date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 28th day of September, 2012.